*604 BENTON, J.,
with whom ELDER, J., joins, dissenting.
This appeal challenges the validity of an arrest before removing blood pursuant to the implied consent law, Code § 18.2-268.2, and the admission into evidence of the certificate of analysis of the blood. “[I]f the arrest is not lawful, consent for the blood alcohol test is not implied, and the results of any such test are not admissible [to prove] intoxication.” Smith v. Commonwealth, 32 Va.App. 228, 233-34, 527 S.E.2d 456, 459 (2000). I would hold that the arrest was not valid and that the admission of the certificate of analysis was reversible error.
I. Validity of Arrest
I agree with the majority’s statement of the principle that, “under the common law, an arrest required either the application of physical force or, where that was absent, submission to the assertion of authority.” Cavell v. Commonwealth, 28 Va.App. 484, 486, 506 S.E.2d 552, 553 (1998) (en banc) (citing California v. Hodari D., 499 U.S. 621, 626-27, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)). “At common law, four requisites are involved in arrest: (1) A purpose to take the person into custody, (2) under real or pretended authority, (3) resulting in actual or constructive seizure or detention of his person, (4) so understood by the arrestee.” Rollin M. Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 208 (1940). The person to be arrested is entitled to know of “(1) the intention to take him into the custody of the law, (2) the authority for the arrest, and (3) the reason therefor.” Id. at 249.
Put simply, mere words do not constitute an arrest at common law. Cavell, 28 Va.App. at 487, 506 S.E.2d at 553. Likewise, an officer’s “immediate physical ability to arrest, without more, [is] not sufficient to effectuate an arrest.” Id. at 486, 506 S.E.2d at 553 (citing Perkins, supra at 206).
Although Officer Doyle testified that he orally told Bristol he was under arrest, his words did not suffice to constitute an arrest. Cavell, 28 Va.App. at 487, 506 S.E.2d at 553. The record proves that neither Officer Doyle nor Officer Eberts took actions to actually arrest Bristol or to objectively mani *605 fest an arrest. They did not restrain him or touch him in any manner when talking to him. Moreover, their actions do not suggest that their purpose was to arrest Bristol or that Bristol was ever in fact taken into custody. Indeed, when Officer Doyle left the hospital, he did not even inform Officer Eberts, his supervising officer, that he had “arrested” Bristol. The report he later prepared at the police station does not mention an arrest.
Officer Eberts, who remained in the emergency room after Officer Doyle left the hospital, testified that he did not arrest Bristol and that Officer Doyle did not tell him that Bristol was under arrest. Officer Eberts further testified that when he attempted to talk to Bristol, Bristol was “incoherent,” was “hurting [due to] pain from the accident,” and was not under arrest. Officer Eberts then left Bristol in the hospital and went to the police station to write his report. Bristol was treated for his head injury and later left the hospital without any official restraint. Up to this point, no valid arrest had occurred.
The evidence did not prove Bristol submitted to Officer Doyle’s words of arrest. Bristol’s consent to the taking of his blood cannot be deemed an acquiescence to an arrest. The implied consent law provides that “[a] person, after having been arrested ..., may be required to submit to a blood test.” Code § 18.2-268.2(0 (emphasis added). The statute, thus, presupposes a valid arrest before consent is obtained for the test. The consent to the taking of the test does not establish the fact of an arrest, which the statute first requires. To suppose that it does is to engage in a post hoc rationalization and circular reasoning. Bristol merely consented to the taking of his blood after Officer Doyle told him that his refusal to consent could lead to the suspension of his driving privileges and could be used as evidence in a criminal trial. Shortly after Bristol signed the consent form in a bed in the trauma area, hospital personnel took him from the trauma area to the emergency room, where a technician drew his blood. No evidence proved that Officer Doyle took any action to arrest Bristol or that Bristol submitted to an arrest.
*606 In addition, the officers’ actions after Bristol was released from the hospital fail to show that their purpose was to arrest Bristol at the hospital or to take Bristol into custody. Two days after the accident, when Officer Eberts spoke by telephone with Bristol at his home, he did not inform Bristol that he was under arrest. Indeed, he sought Bristol’s voluntary appearance for questioning. When Bristol arrived at the police station one day later, Officer Eberts questioned Bristol, but again he did not tell Bristol he was under arrest or act in any way to manifest an arrest. As Officer Eberts testified, Bristol was free to leave and did leave after questioning. The record clearly establishes that the police did not take Bristol into custody until after the grand jury returned an indictment in September 2003, more than two months after the accident. Then, Bristol voluntarily appeared at the police station, where an officer served a capias issued upon the indictment, arrested him, and took custody of him. Simply put, the police arrested Bristol four months after the accident.
Bristol notes in his argument that the usual statutory process of arrest was missing until the September arrest. Code § 19.2-82(A) requires that “a person arrested without a warrant shall be brought forthwith before a magistrate or other issuing authority having jurisdiction who shall proceed to examine the officer making the arrest.” The evidence is undisputed that Officer Doyle failed to bring Bristol before a magistrate and had no apparent intention of doing so. Bristol was therefore never “arrested” within the meaning of the common law or the statute until four months after the accident. Whether probable cause to arrest existed is irrelevant in this analysis because Officer Doyle failed to properly effectuate Bristol’s arrest.
“The results of a blood or breath test provided by [the implied consent law] are admissible against the accused in a trial for driving under the influence of alcohol so long as the accused has first been validly arrested.” Durant v. Suffolk, 4 Va.App. 445, 448, 358 S.E.2d 732, 734 (1987). Reversing the conviction for driving under the influence, we reasoned as follows:
*607 “Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the ‘implied consent’ law. Moreover, defendant’s actual consent in this case was invalid because it was based upon a belief, generated by the officer’s recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate [of analysis] in evidence was improper.”
Id. at 449, 358 S.E.2d at 734 (quoting Thomas v. Town of Manon, 226 Va. 251, 254, 308 S.E.2d 120,122 (1983)).
As in Durant and Thomas, Bristol’s arrest months later was untimely for purposes of the implied consent law. Bristol was not validly arrested in the hospital and was not bound under the statute to submit to a blood test when in the hospital. Because his consent was not implied under these circumstances, and any actual consent “was based upon a belief, generated by the officer’s recitation of the law, that he was bound to submit to a test,” the trial judge erred by admitting the certificate of analysis into evidence. Id.
II. Exigent Circumstances
The Commonwealth contends that even if the arrest was invalid, the search and seizure of Bristol’s blood was valid under the exigent circumstances exception to the Fourth Amendment. Citing Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and Tipton v. Commonwealth, 18 Va.App. 370, 444 S.E.2d 1 (1994), the Commonwealth argues that although the certificate of analysis was inadmissible, the results from blood analysis were admissible, as in Tipton, via the testimony of the forensic toxicologist.
In Tipton, the trial judge made specific findings that the officer had probable cause to arrest the defendant and that exigent circumstances justified taking his blood. 18 Va.App. at 372, 444 S.E.2d at 2. The Commonwealth then introduced the test results through the testimony of the chemist who performed the test. The trial judge did not permit the prosecutor to use either the certificate of analysis or the statutory presumptions. Id. In comparison to Tipton, the trial judge in this case admitted the certificate of analysis into *608 evidence. We can assume that by doing so, the trial judge sitting as fact finder applied the statutory presumption that Bristol was intoxicated.
Also, unlike Tipton, the trial judge made no finding that probable cause existed to arrest Bristol or that the search and seizure of his blood was reasonable under the Fourth Amendment. Given the limited investigation Officer Doyle had conducted prior to reading Bristol the implied consent statute, we cannot presume what findings the trial judge would have made under the circumstances of this case. Thus, I would hold that Tipton’s reasoning does not apply.
III. Harmless Error
The Commonwealth also contends that even if the trial court erred in admitting the evidence, the error was harmless. I disagree.
Recognizing the prejudicial effect of the certificate of analysis and the rebuttable presumption that attaches to it, the Supreme Court reversed a conviction in a case where a defendant “had a strong odor of alcohol about his person,” was slurring his speech, and admitted to consuming beer and whisky. See Thomas, 226 Va. at 254, 308 S.E.2d at 121. In Durant, this Court similarly was unable to conclude, “as a matter of law that the result would not have been different if such evidence had not been considered by the trial court.” 4 Va.App. at 449, 358 S.E.2d at 734. This is so “[bjecause it is probable that [the fact finder] attached great weight to the incriminating evidence in the certificate.” Thomas, 226 Va. at 254, 308 S.E.2d at 122. Accord Overbee v. Commonwealth, 227 Va. 238, 244, 315 S.E.2d 242, 245 (1984); Castillo v. Commonwealth, 21 Va.App. 482, 489, 465 S.E.2d 146, 149 (1995); Durant, 4 Va.App. at 449, 358 S.E.2d at 734.
I am unable to say from the circumstances of this case that the error did not affect the verdict. The trial judge admitted the certificate of analysis after ruling that the implied consent law was applicable. I can only assume that the judge relied upon the certificate, which he admitted in evidence, in convict *609 ing Bristol. This Court and the Supreme Court have held that the error is not harmless even when there is compelling evidence of a defendant’s intoxication independent of the certificate of analysis. See, e.g., Castillo, 21 Va.App. at 486, 465 S.E.2d at 148 (comparing Overbee, 227 Va. at 240, 315 S.E.2d at 243; Thomas, 226 Va. at 253, 308 S.E.2d at 121, and Durant, 4 Va.App. 445, 358 S.E.2d 732). As we held in Castillo, “[c]lear evidence ... implies that the trial court applied the statutory presumption of intoxication; we[, therefore,] cannot say from the facts and circumstances that this error did not affect the verdict.” 21 Va.App. at 491, 465 S.E.2d at 150.
For these reasons, I would reverse the convictions and remand for a new trial if the Commonwealth be so advised. Therefore, I dissent.